UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RICHARD L. WINANS, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 17-CV-659<br>) |
| v. | ) CLASS ACTION<br>) |
| FRANKLIN COLLECTION SERVICE, INC. and DAN FRANKLIN, | ) JURY TRIAL DEMANDED<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff RICHARD L. WINANS, by and through counsel, files this Complaint against Defendants FRANKLIN COLLECTION SERVICE, INC. and DAN FRANKLIN (collectively, "Franklin"), alleging as follows:

### *Introduction*

1.   This is a class action for statutory damages, punitive damages, attorney fees and costs under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. § 58-70-1 *et seq.*

2.   "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

1

3. Debt collection, unlike poker, is not a game; it is a painful fact of life for hundreds of thousands of Americans whose jobs have been lost to cheap foreign labor and automation, or who have been ambushed by sky-high medical bills they assumed their insurance would cover, or who have suddenly lost their spouses to death or divorce.

4. For Americans who find themselves in desperate financial straits, often through no fault of their own, every financial decision is a difficult one. When multiple debt collectors are demanding payment, these consumers must decide which debt collector to pay first, while balancing the need to keep food on the table, prescriptions filled, and the air conditioner running. For these consumers, deciding how much to pay to which debt collector when is a delicate balance – and it is no exaggeration to say that their well-being and, sometimes, their life hangs in the balance.

5. Congress realized the delicacy and gravity of this balance – and it realized that some debt collectors are tempted to put a thumb on the scale to alter a consumer's calculus. For these reasons, Congress enacted the FDCPA to ensure that consumers faced with this gut-wrenching balancing act would *receive only truthful and accurate information* concerning the consequences of paying or not paying their debts.

6. In other words, Congress realized that, unlike poker, debt collection is not a game – and, therefore, that debt collectors should not be permitted to bluff.

2

7. Ignoring the FDCPA, Defendants have attempted to pull an enormous bluff on hundreds, if not thousands, of North Carolina consumers. Franklin is a collection agency. It is *not* a law firm. But it sent form collection letters identical to the letter attached as **Exhibit B** ("Collection Letter B") to hundreds or thousands of North Carolina consumers. The Collection Letter was an attempt to bluff consumers into thinking that Franklin was a law firm, when it was not; that the consumers were at risk of being sued, when they were not; and that attachment of their personal or real property was imminent, when it was not.

8. Even worse, the Collection Letter threatens illegal activity. It is calculated to frighten the least-sophisticated consumer into believing that his or her employer will be contacted concerning the debt, which is prohibited by the FDCPA. And it is calculated to frighten the least-sophisticated consumer into believing that his or her wages will be garnished, which is not permitted in North Carolina.

9. In short, Franklin intentionally crafted a Collection Letter full of veiled threats that it hoped would "get the debtors' knees knocking," but which had no basis in reality. These false threats and misleading representations violated both the FDCPA and the NCCAA.

*Parties*

10. Plaintiff Richard L. Winans is a citizen of the State of North Carolina who resides within Forsyth County, North Carolina.

11. Mr. Winans is a "consumer," as that term is defined by § 1692a(3) of the FDCPA.

12.     Defendant Franklin Collection Service, Inc. ("FCSI") is a business corporation organized and existing under the laws of the State of Mississippi, with its principal place of business located in Lee County, Mississippi.

13.     FCSI is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA, in that (a) the principal purpose of its business is the collection of debts, and it uses the mails and other instrumentalities of interstate commerce in connection with that business, and (b) it regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

14.     FCSI is a "collection agency" as that term is defined by N.C. Gen. Stat. §58-70-15(a), in that it is directly engaged in soliciting claims owed or asserted to be owed or due multiple persons, and in that it is directly engaged in the asserting, enforcing or prosecuting of those claims.

15.     FCSI has applied for and has been granted a license to operate as a collection agency by the North Carolina Department of Insurance, and has been issued the permit number 101292.

16.     Defendant Dan Franklin ("Mr. Franklin") is a natural person whose regular place of business is located within Lee County, Mississippi.

17.     Mr. Franklin is the President, sole officer, sole Director, and CEO of FCSI, and has been since its inception in 1980. On information and belief, he is the sole shareholder of FCSI and directly controls all aspects of FCSI's business, including writing and approving all collection letters.

4

18. Mr. Franklin is a "debt collector" as that term is defined by § 1692a(6) of the FDCPA, in that he regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

19. Mr. Franklin is a "collection agency" as that term is defined by N.C. Gen. Stat. §58-70-15(a), in that he is directly and indirectly engaged in soliciting claims owed or asserted to be owed or due multiple persons, and in that he is directly and indirectly engaged in the asserting, enforcing or prosecuting of those claims.

20. As a regular employee of a duly licensed collection agency, Mr. Franklin is not required to obtain a separate license to operate as a collection agency in North Carolina. *See* N.C. Gen. Stat. § 58-70-1.

21. Alternatively, Mr. Franklin is a "debt collector" as that term is defined by N.C. Gen. Stat. 75-50(3), in that he engages, directly and indirectly, in debt collection from consumers.

## *Jurisdiction and Venue*

22. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

23. This Court has supplemental jurisdiction over Plaintiff's North Carolina state law claims under 28 U.S.C. § 1367, in that his state law claims are so related to her FDCPA claims that they form part of the same case or controversy.

5

24. Venue is proper in this district under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred within this district.

*Factual Allegations*

25. Sometime in 2015, Plaintiff became unable to pay his AT&T cell phone bill.

26. Plaintiff used the AT&T cell phone exclusively for personal, family, and/or household purposes.

27. Eventually, Mr. Winan's AT&T account became past due in the amount of $289.58.

28. Sometime in early 2016, AT&T placed Mr. Winan's account with Franklin for collection.

29. On May 18, 2016, Mr. Winan received a dunning letter from Franklin. A copy of the letter that Mr. Winan received is attached as **Exhibit A** ("Collection Letter A").

30. The heading of Collection Letter A lists the name of the sender, not simply as "Franklin Collection Service, Inc.," but as "*The Collection Firm* of Franklin Collection Service, Inc." (emphasis added).

31. Collection Letter A includes a unique number that FCSI had assigned to Plaintiff's account – referring to it not as an *account* number, but as a *case* number.

32. The second full paragraph of Collection Letter A reads, "If you are not paying this account in full, contact your attorney regarding our potential remedies, and your defenses, or call [FCSI's phone number]."

33. The least sophisticated consumer would understand the second full paragraph as a threat to file a lawsuit against the consumer.

34. Moreover, because the sentence refers to "*our* potential remedies," the least sophisticated consumer would understand the sentence to mean that it would be FCSI, specifically, that would be suing him.

35. The phrases "collection firm" and "case number" reinforce the impression that FCSI is a law firm treating Plaintiff's AT&T account as a legal case.

36. FCSI is not a law firm and Mr. Franklin is not an attorney.

37. On information and belief, AT&T has never sued a consumer for a sum as small as $289.58 – and it had no intention of doing so here.

38. On July 21, 2016, Mr. Winan received another letter from Franklin. A copy of the second letter that Mr. Winan received is attached as **Exhibit B** ("Collection Letter B").

39. Like Collection Letter A, Collection Letter B announces that it is from "*The Collection Firm* of Franklin Collection Service, Inc." (emphasis added), and refers to a unique "case number" assigned by FCSI.

40. The main paragraph of Collection Letter B reads, in pertinent part:

> We have made several attempts for you to resolve this
> letter voluntarily, yet it goes unsatisfied as of the date on

7

this notice. We seldom resort to litigation if the account is resolved in a timely manner. At this time, there has been no civil action filed or judgment obtained.

41. To the right of the main paragraph are two checkboxes, neither of which have been checked. The checkboxes are labeled, "Employment Verified," and "Assets Located."

42. At the bottom of Collection Letter B is a short paragraph that reads, "To be sure of proper credit *and to stop further procedures*, return this notice with payment in full to Franklin Collection Service, Inc." (emphasis added).

43. The unequivocal meaning of the bottom paragraph is that, if the consumer fails to pay the total amount due, FCSI *will* engage in further "procedures" to collect the debt.

44. Under the FDCPA, debt collector communications are analyzed using the "least-sophisticated-consumer standard," which, "while protecting naïve consumers, . . . also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *United States v. National Fin. Servs.*, 98 F.3d 131, 136 (4th Cir. 1996).

45. Any consumer, sophisticated or not, would read the threat in the bottom paragraph in the context of the rest of the collection letter.

46. The natural reading of Collection Letter is that, if the recipient does not pay in full, FCSI will engage in the "further procedures" of verifying the

8

consumer's employment, locating the consumer's assets, and filing a civil lawsuit against the consumer.

47. "Seldom" is defined as "not often; rarely."

48. FCSI, which is not a law firm, does not file civil lawsuits against consumers. Thus, Collection Letter B's statement that it *sometimes* files lawsuits against consumers is false.

49. Moreover, the main paragraph reinforces the threat in the bottom paragraph with another threat. The unmistakable gist of the main paragraph is that FCSI sues consumers who do not timely pay, that the recipient has not timely paid, and that, therefore, the recipient will face the "further procedure" of a lawsuit if he does not pay immediately.

50. Further, Collection Letter B threatens the "further procedures" of the consumer's employment being verified, and the consumer's assets being located. The former implies wage garnishment, and the latter implies attachment of assets by the sheriff's department.

51. Except in limited circumstances (such as student loan debts and tax debts), wage garnishment is not permitted by North Carolina law.

52. "Employment verified" also implies that FCSI will contact the recipient's employer concerning the debt – a "further procedure" that FCSI was not legally entitled to take. *See* 15 U.S.C. § 1692c(b).

53. Moreover, a debtor's assets cannot be seized until the debtor has been sued and the creditor has obtained a judgment. Even after a judgment has been

9

obtained, the creditor must still serve a "Notice of Right to Have Exemptions Designated," and give the debtor 20 days to claim any statutory exemptions.

54. In other words, even if FCSI was in the business of filing lawsuits and executing upon judgments, and even if AT&T sued people for amounts as low as $289.58, asset seizure would still have been months or years in the future. Nevertheless, Collection Letter B threatened the recipient with imminent asset seizure if the total amount due was not paid immediately.

55. On information and belief, Mr. Franklin drafted and/or approved the use of both Collection Letter A and Collection Letter B.

56. When Mr. Winans read Collection Letter A and Collection Letter B, he feared that he would be subject to the "further procedures" threatened by the letters, causing him mental and emotional distress.

57. Moreover, by sending Collection Letter A and Collection Letter B, Franklin intentionally subjected Mr. Winans to the risk of a harm that Congress enacted the FDCPA to prevent – specifically, that his financial decisions would be skewed, to his detriment, as a result of false and misleading information from a debt collector.

### *Class Action Allegations*

58. Under Federal Rules of Civil Procedure 23, a class action is appropriate and preferable in this case because:

> a. Based on the fact that the Collection Letters at the heart of this litigation are mass-mailed form letters, the class is so numerous that joinder of all members is impractical.

10

b. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The principal question presented by this case is whether the letters sent by Franklin (**Exhibits A & B**) violated various provisions of the FDCPA and NCCAA, as further explained below.

c. The only individual issue is the identification of the consumers who received the Collection Letters (i.e. the Class members). This issue is a matter capable of ministerial determination from Defendants' records.

d. Plaintiff's claims are typical of those of the class members, as they are based on the same facts and legal theories.

e. Plaintiff will fairly and adequately represent the class members' interests and has retained counsel experienced in bringing class actions and collection abuse claims.

59. A class action is superior for the fair and efficient adjudication of the class members' claims as Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. §1692k.

60. The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action.

61. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

11

## COUNT ONE
## VIOLATIONS OF THE FDCPA IN COLLECTION LETTER B

62. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

63. This Count is brought by Plaintiff, individually and on behalf of a Class ("the FDCPA class") consisting of consumers with North Carolina addresses, as follows:

> All consumers with North Carolina addresses, who: (a) within one year of July 20, 2017; (b) were sent a debt collection letter by Defendant FCSI in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as **Exhibit B** sent to the Plaintiff; (c) the debt sought to be collected was not a federal student loan or tax debt; (d) the total amount due of the debt sought to be collected was $500 or less; and (e) the letter was not returned by the postal service as undelivered.

64. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

65. Specifically, FDCPA § 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."

66. Moreover, FDCPA § 1692e(4) prohibits a collector from "represent[ing] or impl[ying] that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

12

67. Additionally, FDCPA § 1692e(5) prohibits a collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

68. Furthermore, FDCPA § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

69. Additionally, Section 1692f(6) of the FDCPA prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

70. By sending Collection Letter B, Defendants violated the provisions of the FDCPA cited above by:

- Threatening to garnish the wages of Plaintiff and the class members, even though, under no circumstances, would Franklin or its creditor clients be legally entitled to take that action.

- Falsely representing that FSCI is a law firm.

- Falsely stating that FSCI sometimes files civil lawsuits against consumers.

- Threatening that FSCI would sue Plaintiff and the class members, when neither FSCI nor its creditor clients intended to take that action, and when FSCI was not legally entitled to take that action.

- Threatening to send sheriffs' deputies to attach property owned by Plaintiff and the class members, when neither FSCI nor its creditor clients intended

13

> to take that action or were legally entitled to take that action.

- Threatening to contact consumers' employers regarding their alleged debts, when FSCI was not legally entitled to take that action.

WHEREFORE, Plaintiff prays that this Court grant the following relief in his favor, and on behalf of the FDCPA Class, and that judgment be entered against the Defendants, and each of them, for the following:

(A) As to Plaintiff, statutory damages in the amount of $1,000;

(B) As to Federal Class B, statutory damages in the amount of the lesser of $500,000 or one percent of Defendants' combined net worth;

(C) Attorneys' fees, litigation expenses and costs;

(D) A declaration that Collection Letter B violates the FDCPA;

(E) Any other relief that this Court deems appropriate under the circumstances.

## COUNT TWO
## VIOLATIONS OF THE NCCAA IN COLLECTION LETTER B

71. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

72. This Count is brought by Plaintiff, individually and on behalf of a Class ("NCCAA Class B") consisting of consumers with North Carolina addresses, as follows:

> All consumers with North Carolina addresses, who: (a) within three years of July 20, 2017; (b) were sent a debt collection letter by Defendant FCSI in a form materially

14

> identical or substantially similar to the letter attached to Plaintiff's Complaint as **Exhibit B** sent to the Plaintiff; (c) the debt sought to be collected was not a federal student loan or tax debt; (d) the total amount due of the debt sought to be collected was $500 or less; and (e) the letter was not returned by the postal service as undelivered.

73. N.C. Gen. Stat. § 58-70-95(6) prohibits collection agencies from "[r]epresenting that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law . . . ."

74. Also, N.C. Gen. Stat. § 58-70-95(7) prohibits "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made . . . ."

75. Additionally, N.C. Gen. Stat. § 58-70-95(8) prohibits collection agencies from "[t]hreatening to take any action not permitted by law."

76. N.C. Gen. Stat. § 58-70-110 prohibits collection agencies from "collect[ing] or attempt[ing] to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation."

77. Specifically, N.C. Gen. Stat. § 58-70-110(4) prohibits "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . or falsely representing the creditor's rights or intentions . . . ."

15

Case 1:17-cv-00659-TDS-LPA   Document 1   Filed 07/20/17   Page 15 of 20

78. Moreover, N.C. Gen. Stat. § 58-70-110(7) prohibits "[f]alsely representing the status or true nature of the services rendered by the collection agency or its business."

79. Debt collectors that are not collection agencies are subject to identical requirements, which are codified at N.C. Gen. Stat. § 75-51(6), (7) and (8) and §75-54, (4), and (7).

80. By sending the Collection Letter B, Defendants violated the provisions of North Carolina law cited above by:

- Threatening to garnish the wages of Plaintiff and the class members, even though, under no circumstances, would Franklin or its creditor clients be legally entitled to take that action.

- Falsely representing that FSCI is a law firm.

- Falsely stating that FSCI sometimes files civil lawsuits against consumers.

- Threatening that FSCI would sue Plaintiff and the class members, when neither FSCI nor its creditor clients intended to take that action, and when FSCI was not legally entitled to take that action.

- Threatening to send sheriffs' deputies to attach property owned by Plaintiff and the class members, when neither FSCI nor its creditor clients intended to take that action or were legally entitled to take that action.

- Threatening to contact consumers' employers regarding their alleged debts, when FSCI was not legally entitled to take that action.

16

WHEREFORE, Plaintiff prays that this Court grant the following relief in his favor, and on behalf of NCCAA Class B, and that judgment be entered against the Defendants, and each of them, for the following:

    (A)    As to Plaintiff, statutory damages in the amount of $4,000;

    (B)    As to Carolina Class B, statutory damages in the amount of $4,000 per class member;

    (C)    Attorneys' fees, litigation expenses and costs;

    (D)    A declaration that Collection Letter B violates North Carolina law;

    (E)    Any other relief that this Court deems appropriate under the circumstances.

## COUNT THREE
## VIOLATIONS OF THE NCCAA IN COLLECTION LETTER A

81. Plaintiff restates, realleges, and incorporates herein by reference all foregoing paragraphs as if set forth fully in this Count.

82. This Count is brought by Plaintiff, individually and on behalf of a Class ("NCCAA Class A") consisting of consumers with North Carolina addresses, as follows:

> All consumers with North Carolina addresses, who: (a) within three years of July 20, 2017; (b) were sent a debt collection letter by Defendant FCSI in a form materially identical or substantially similar to the letter attached to Plaintiff's Complaint as **Exhibit A** sent to the Plaintiff; (c) the total amount due of the debt sought to be collected was $500 or less; and (d) the letter was not returned by the postal service as undelivered.

17

83. N.C. Gen. Stat. § 58-70-95(7) prohibits "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made . . . ."

84. N.C. Gen. Stat. § 58-70-110 prohibits collection agencies from "collect[ing] or attempt[ing] to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation."

85. Specifically, N.C. Gen. Stat. § 58-70-110(4) prohibits "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . or falsely representing the creditor's rights or intentions . . . ."

86. Moreover, N.C. Gen. Stat. § 58-70-110(7) prohibits "[f]alsely representing the status or true nature of the services rendered by the collection agency or its business."

87. Debt collectors that are not collection agencies are subject to identical requirements, which are codified at N.C. Gen. Stat. § 75-51(7) and §75-54, (4), and (7).

88. By sending the Collection Letter A, Defendants violated the provisions of the NCCAA cited above by:

- Falsely representing that FSCI is a law firm.
- Falsely stating that FSCI sometimes files civil lawsuits against consumers.

- Threatening that FSCI would sue Plaintiff and the class members, when neither FSCI nor its creditor clients intended to take that action.

WHEREFORE, Plaintiff prays that this Court grant the following relief in his favor, and on behalf of NCCAA Class A, and that judgment be entered against the Defendants, and each of them, for the following:

(A)  As to Plaintiff, statutory damages in the amount of $4,000;

(B)  As to Carolina Class A, statutory damages in the amount of $4,000 per class member;

(C)  Attorneys' fees, litigation expenses and costs;

(D)  A declaration that Collection Letter A violates North Carolina law;

(E)  Any other relief that this Court deems appropriate under the circumstances.

## *Demand for Jury Trial*

Please take notice that Plaintiff demands a trial by jury on all claims herein asserted.


Dated: July 20, 2017
      Winston-Salem, N.C.

                                              Respectfully submitted,

                                              SALEM COMMUNITY LAW OFFICE

                                              By: /s/ Jonathan R. Miller
                                                      Jonathan R. Miller
                                                      One of Plaintiff's Attorneys

**Attorneys for Plaintiff**
Jonathan R. Miller
N.C. Bar No. 48224
Salem Community Law Office
301 N. Main St., Suite 2415
Winston-Salem, NC 27101
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com

Brian L. Bromberg
(to apply for admission *pro hac vice*)
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
brian@bromberglawoffice.com