IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
C.A. No. 1:17-cv-00659-TDS-LPA

RICHARD L. WINANS, on behalf of
himself and all others similarly
situated,

    Plaintiff,

vs.

FRANKLIN COLLECTION SERVICE, INC.
and DAN FRANKLIN,

    Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**I. MATTER BEFORE THE COURT**

The matter before the Court is the defendants Franklin Collection Service, Inc.'s ("Franklin") and Dan Franklin's ("Mr. Franklin") (collectively, "Defendants") motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**II. FACTS**

The focal point of this litigation is two collection letters sent by Franklin to the plaintiff, Richard L. Winans ("Plaintiff") regarding his account with AT&T. Plaintiff asserts the letters violated the Fair Debt Collection Practices Act, 15 U.S.C.

1

§ 1692 *et seq.* ("the FDCPA") and the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70-1 *et seq.* ("the NCCAA"). Plaintiff alleges the following:[1]

Sometime in 2015, Plaintiff became unable to pay his AT&T cell phone bill. (Dkt No 1 ¶ 25). AT&T thereafter placed the account with Franklin for collection. (*Id.* at ¶ 28). On May 18, 2016, Plaintiff received a letter (the "First Letter") from "The Collection Firm of Franklin Collection Service, Inc." (*Id.* at ¶¶ 29-30). The First Letter included the "case" number Franklin had assigned to Plaintiff's account and stated: "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [Franklin's phone number]." (*Id.* at ¶ 32).

Plaintiff then received a second letter from Franklin (the "Second Letter"). (*Id.* at ¶ 39). The Second Letter contained the same references to the "The Collection Firm of Franklin Collection Service, Inc." and the "case" number. *Id.* It read as follows:

> WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS MATTER VOLUNTARILY, YET IT DOES UNSATISFIED AS OF THE DATE ON THIS NOTICE. WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT

---

[1] The following facts are recited from Plaintiff's complaint and, for the purpose of this motion, are treated as true. *See, e.g.*, *Burbach Broad. Co. of Del v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (stating that in a Rule 12(c) motion, all facts asserted in the complaint must be taken as true). Except for the limited purpose of determining this motion, Defendants do not concede that the facts as described herein, and only admit those facts as admitted in their Answer (Dkt No 10).

2

OBTAINED . . . . THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

(Dkt No 1 Ex B).

To the right of the letter's body were two checkboxes labeled "Employment Verified" and "Assets Located," neither of which were checked. The Second Letter also stated: "TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO FRANKLIN COLLECTION SERVICE, INC." (Dkt No 1 Ex B).

Based upon these two communications, Plaintiff filed suit against Franklin, as well as Mr. Franklin individually, alleging: (1) the First Letter violated the NCCAA; and (2) the Second Letter violated the FDCPA and the NCCAA. Defendants filed their Answer on October 23, 2017.

### III. ARGUMENT

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) "may be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 817 (M.D.N.C. Mar. 31, 2011) (quotations and citations omitted). "The standard of review for a 12(b)(6) and a 12(c) motion is nearly the same[,] with the real difference

3

being that on a 12(c) motion, the Court considers the answer as well as the complaint." *Id.* (brackets, quotations, and citations omitted).

For the reasons set forth below, Defendants are entitled to judgment as a matter of law as to each of Plaintiff's claims and the Complaint should be dismissed.

### A. Judgment on the Pleadings is proper as to both defendants because the collection letters comply with applicable law.

Plaintiff alleges the First Letter violates the NCCAA by: (1) falsely representing that Franklin is a law firm; (2) falsely stating that Franklin sometimes files civil lawsuits against consumers; and (3) threatening litigation when neither Franklin nor its creditor client intended to take that action. *See* (Dkt No 1 ¶ 88). Plaintiff claims the Second Letter violated the FDCPA and the NCCAA for the same reasons, as well as: (1) threatening to garnish the wages of Plaintiff; (2) threatening to send sheriffs' deputies to attach property owned by Plaintiff when neither Franklin nor its creditor clients intended or were legally entitled to take that action; and (3) threatening to contact consumers' employers regarding their alleged debts. *See* (Dkt No 1 ¶¶ 70 and 80). Because the collection letters and Plaintiff's allegations related to the collection letters are similar, Defendants addresses them together where appropriate.

**1. Neither collection letter falsely represented Franklin was a law firm and all claims pursuant to 15 U.S.C. §1692e(3) and N.C. Gen. Stat. §58-70-110(7), therefore, should be dismissed.**

Plaintiff asserts that the collection letters falsely represent Franklin is a law firm because they refer to Franklin as "The Collection Firm of Franklin Service, Inc.," and reference Franklin's "case" number. Plaintiff alleges that these references "reinforce[ed] the impression that [Franklin] is a law firm treating Plaintiff's AT&T account as a legal case." (Dkt No 1 ¶¶ 30-31; 35). Presumably, Plaintiff believes the letters violate portions of Section 1692e of the FDCPA and Section 58-70-110 of the NCCAA, both which prohibit the use of any false, deceptive or misleading statements.[2]

Whether a communication is false, misleading, or deceptive under the FDCPA "is determined from the vantage of the 'least sophisticated consumer.'" *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 394 (4th Cir. 2014). While the least sophisticated consumer standard protects unwitting consumers, "the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996).

---

[2] In his Complaint, Plaintiff is nonspecific about which statutory provision Defendants allegedly violated. Therefore, Defendant assumes Plaintiff alleges violations of the statutory provision which prohibits actions most closely resembling the actions alleged in the Complaint.

Section 1692e(3) of the FDCPA specifically prohibits the false representation or implication that any "individual is an attorney or that a communication is from an attorney." 15 U.S.C. § 1692e(3). Similarly, N.C. Gen. Stat. § 58-70-110(7) prohibits collection agencies from "[f]alsely representing the status or true nature of the services rendered by the collection agency or its business." N.C. Gen. Stat. § 58-70-110 (2017).

Plaintiff's use of the term "collection firm" and its description of its unique identifier as a "case" number are not false or misleading nor do they imply that Franklin is a law firm. In dismissing a similar claim against Franklin, the Northern District of Alabama concluded "the term 'collection firm' is merely a descriptive term used to explain [Franklin's] business. Indeed, terms such as 'firm' or 'associates,' although often used by attorneys, are used by a wide variety of businesses that are not engaged in the practice of law." *Bradley v. Franklin Collection Serv.*, No. 5:10-cv-01537-AKK, 2013 U.S. Dist. LEXIS 45777, at *22-23 (N.D. Ala. March 28, 2013), *rev in part on other grounds*, 739 F.3d 606 (11th Cir. 2014); *see also id.* at *22 (noting that the plaintiff "allege[d] that [Franklin] misrepresented itself as a law firm in its letters to [the plaintiff] when it used letterhead that contained the term 'The Collection Firm of Franklin Services, Inc.'"); *Zaborac v. Phillips and Cohen Assocs., Ltd.*, 330 F. Supp. 2d 962, 970 (N.D. Ill. 2004) (finding no FDCPA violation where a collection firm used the term

6

"Associates" in its name, because "'associates' is in no way limited to law firms but is used as well by a wide variety of businesses not engaged in the practice of law").

**2. Neither collection letter contains a threat of litigation or false representation concerning litigation. Accordingly, all FDCPA and NCCAA claims relating to these assertions should be dismissed.**

Plaintiff alleges that the collection letters falsely state Franklin "sometimes" files lawsuits against consumers and contain implied threats of litigation where no such action was intended.

a. **First Letter**

With respect to the First Letter, plaintiff relies upon the following language to support his claims: "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [Franklin's telephone number]." (Dkt No 1 Ex A). Plaintiff contends that the least sophisticated consumer would understand that language to include a threat to file a lawsuit and, more specifically, the use of the language "*our potential remedies*" to mean Franklin would be suing him. (Dkt No. 1, ¶¶ 33-34).

A number of courts have reviewed this specific language and concluded that the language does not contain false representations or deceptive means to collect a debt. In *Clark v. Franklin Collection Serv.,* 2015 U.S. Dist. LEXIS 70944 (D.N.J. June 2, 2015), the Court reviewed the same language and held that

7

> there [was] nothing in the tone or content of the letter that is abusive or harassing. It merely put[] [the p]laintiff on notice of the debt and inform[ed] [p]laintiff that he should take one of three actions: pay the debt, call the Defendant, or consult a lawyer about the possible consequences of doing neither.

*Clark*, 2015 U.S. Dist. LEXIS 70944, at *5. The Court determined that the letter did not "make any statement that would coerce or mislead even the least sophisticated debtor into thinking he would have to pay the debt in order to avoid some immediate consequence." *Id.* The Court went on to state that by "merely informing the debtor that there is an outstanding debt and that the debtor should explore his options with the debt collector or a lawyer," Franklin did not cross the line between legal and illegal behavior. *Id.* at *7. At least two other District Courts have followed *Clark*'s reasoning on this point. *See Rivera v. Franklin Collection Service, Inc.*, No. 17-631, 2017 U.S. Dist. LEXIS 112105, at *7-8 (E.D. Pa. July 19, 2017) (following *Clark* because "the letter sent by [Franklin] to [the debtor] contains no threat to take any action that cannot legally be taken, nor does it contain false representations or deceptive means to attempt to collect a debt"); *Covington v. Franklin Collection Service, Inc.*, No. 16-2262-JWL, 2016 U.S. Dist. LEXIS 103601, at *5-6 (D. Kan. Aug. 5, 2016) (finding *Clark*'s application of the least sophisticated debtor standard "persuasive and its conclusion sound. Nothing in the single sentence relied upon by [the] plaintiff would suggest to an unsophisticated debtor that the threat of litigation

8

Case 1:17-cv-00659-TDS-LPA   Document 14   Filed 12/01/17   Page 8 of 18

was imminent or that litigation was pending"). Using similar logic, any claims brought under N.C. Gen. Stat. §58-70-110 should be dismissed in this matter.

    b. **Second Letter**

With respect to the Second Letter, Plaintiff relies upon the following language:

- "WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MATTER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT OBTAINED."

- "TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO [FRANKLIN]"

(Dkt No. 1, Ex. B).

With respect to the Second Letter, Plaintff's assertions are two-fold: first, the letter falsely represents that Franklin sometimes files suit and second, that the natural reading of the Second Letter is that "if the recipient does not pay in full, [Franklin] will engage in the '*further procedures*' of verifying the consumer's employment, locating the consumer's assets, *and filing a civil lawsuit* against the consumer." (Dkt No 1 ¶ 46) (emphasis added).

Like the language in the First Letter, there is nothing in the tone or content of this language which is deceptive, abusive or harassing. Rather, the statement affirmatively states that litigation is a step "seldom" taken by Franklin, and informed Plaintiff that no civil action had been filed against him.

9

A collection letter only violates section 1692e(5) if the least sophisticated consumer "would reasonably believe that the notice[] threaten[s] legal action." *Fin. Servs., Inc.*, 98 F.3d at 136. The threatened legal action considered by § 1692e(5) must be "authorized, likely and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). Nothing in the two sentences relied upon by the Plaintiff suggests or threatens current or imminent litigation.

Courts have previously considered much more direct references to litigation, and found them to not provide a threat of litigation. For instance, in *Jenkins v. Union Corp*, 999 F. Supp. 1120 (N.D. Ill. Mar. 30, 1998), a debt collection agency sent a letter to a debtor stating that "[t]he economic feasibility of some type of litigation by our client has not been determined," and that "if legal action were to be undertaken, it would be costly and time-consuming for both parties." *Jenkins*, 999 F. Supp. at 1136. The Court found that this language did not violate 15 U.S.C. § 1692e(5):

> For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. Courts have found litigation threats even in indirect or oblique statements, provided that they imply legal action *is underway or contemplated in the near future.*

*Id.* (emphasis added); *see also Combs v. Direct Marketing Credit Servs., Inc.,* 1998 U.S. App. LEXIS 32670, at *2 (7th Cir. 1998) (unpublished) (holding language advising a debtor "to consult with [their] attorney regarding [their] liability" did not

10

Case 1:17-cv-00659-TDS-LPA   Document 14   Filed 12/01/17   Page 10 of 18

constitute a threat of litigation). In the present case, the Second Letter does not state or imply that legal action is imminent, ongoing, contemplated in the near future, or even a possibility and therefore does not violate 15 U.S.C. § 1692e(5).

Under the same rationale, the Second Letter does not violate either N.C. Gen. Stat. §§58-70-95(7) or 58-70-110(4). Section 58-70-95(7) prohibits collection agencies from "threatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made." Section 58-70-110(4) prohibits collection agencies from falsely representing the status in any legal proceeding or falsely representing the creditor's rights or intentions. The Second Letter does not state that a lawsuit has been filed, or imply that a lawsuit is imminent. Rather, the letter informs the consumer that no lawsuit or judgment has been obtained, and that litigation is a rare step. (Dkt No 1 Ex B).

**3. The Second Letter neither threatens attachment nor garnishment. Accordingly, all FDCPA and NCCAA claims relating to these assertions should be dismissed.**

Plaintiff alleges that the Second Letter threatened "imminent asset seizure" and that the use of the term "further procedures" when coupled with the "employment verified" and "assets located" checkboxes implied wage garnishment. (Dkt No. 1, ¶¶ 50 and 54). Presumably, Plaintiff asserts that this action was taken

in violation of 15 U.S.C. §§ 1692e(4) and (5), 15 U.S.C. §1692f(6), and N.C. Gen. Stat. § 58-70-95(6) and (8).

At the outset, what is not contained in the Second Letter should be noted. First and foremost, the Second Letter does not contain any mention of sheriffs, sheriffs' deputies, property, attachment, seizure, garnishment, paychecks, or bank accounts. Secondly, neither box was checked in the Second Letter. To suggest that the two unchecked boxes coupled with the words "further procedures" implied or expressly suggested Franklin would attach assets or garnish wages is a quantum and far-fetched leap even for the sophisticated consumer and such an interpretation of the letter's text is "bizarre or idiosyncratic." *Nat'l Fin. Servs.*, 98 F.3d at 136; *see also Wade v. Regional Credit Assoc.*, 87 F.3d 1098, 1099 (9th Cir. 1996) (holding that "[i]f a letter does not contain any threatening language, it is deemed merely informative and therefore, cannot violate § 1692e(5) of the FDCPA").

**4. The Second Letter does not threaten impermissible third party contact. Accordingly, all FDCPA and NCCAA claims relating to these assertions should be dismissed.**

Plaintiff alleges that "employment verified" box in the Second Letter violated 15 U.S.C. § 1692e(5) and N.C. Gen. Stat. § 58-70-95(8) by impliedly threatening to "contact consumers' employers regarding their alleged debts," when Franklin was not legally entitled to take such action. (Dkt No 1 ¶ 52). Because the Second Letter

12

does not threaten any such action, judgment on the pleadings on this issue is appropriate.

While it is not illogical to assume that a collection agency in attempting to collect a debt would want to verify the consumer's employment in assessing collection options, there is nothing in the Second Letter which is objectively threatening or deceptive. Routinely debt collectors verify the consumer's employment by directly asking the consumer. There is nothing in the Second Letter which suggests that the debt collector would contact the consumer's employer or that the debt collector even knew who the consumer's employer was for that matter. Under these circumstances, there is nothing to suggest that Franklin made implied threats to impermissibly contact Plaintiff's employer and all claims regarding the same should be dismissed.

**B. To the extent the Court declines to dismiss all counts as to both defendants, the Court should grant the motion for judgment on the pleadings on all counts as to Mr. Franklin.**

If the Court is not inclined to grant Defendants' motion as to all counts in the Complaint, the Court, at a minimum, should dismiss all counts against Mr. Franklin individually. The Complaint alleges that Mr. Franklin is "the President, sole officer, sole Director, and CEO of [Franklin], and has been since its inception in 1980. On information and belief, he is the sole shareholder of [Franklin] and directly controls

13

all aspects of [Franklin's] business, including writing and approving all collection letters." (Dkt No 1 ¶ 17).

Even taking these allegation as true, Plaintiff cannot state a claim against Mr. Franklin upon which relief can be granted. While the Fourth Circuit has not determined whether or not individuals associated with debt collection agencies can be held liable for FDCPA violations, Defendants respectfully submit the claims set forth against Mr. Franklin cannot survive under any scenario because there are no allegations that provide a basis for piercing the corporate veil or that suggest he was personally involved with the debt collection efforts against Plaintiff.

In this case, the collection efforts were undertaken by a corporate entity. The FDCPA "is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil." *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000); *see also Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("under our holding in *White v. Goodman*, the extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA."). In determining whether to pierce the corporate veil, courts consider a list of factors including "(1) inadequate capitalization; (2) noncompliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into

separate corporations." *Atlantic Tobacco Co. v. Honeycutt*, 398 S.E.2d 641, 643 (N.C. Ct. App. 1990). None of those factors have been alleged in this matter.

Even those courts who have taken a slightly different view acknowledge that a shareholder, officer, or employee may only be held personally liable if "personally involved in the debt collection at issue." *See Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, No. 2:04-CV-00439PGC, 372 F. Supp. 2d 615, 618 (D. Utah 2005). In this case, there are no allegations of Mr. Franklin's direct involvement in the collection of Plaintiff's account, all claims should therefore be dismissed against him individually.

Moreover, while the NCCAA is silent as to individual liability, it only provides for liability as to entities operating as collection agencies. *See* N.C. Gen. Stat. §58-70-130; *Simmons v. Kross Lieberman & Stone, Inc.,* 228 N.C. App. 425, 427, 746 S.E.2d 311, 314 (2013) *Baie v. Prime West Mgmt Recovery LLC (In re Baie)* 2011 Bankr. E.D.N.C. Mar. 30, 2011) (imputing individuals' behavior to collection agency but not finding the individual liability). Similarly, therefore, all claims under the NCCAA should likewise be dismissed as to Mr. Franklin.

## IV. CONCLUSION

For the reasons stated, Defendants are entitled to judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to all counts and

15

allegations of the Complaint.  In the alternative, judgment on the pleadings is proper as to all counts against Mr. Franklin.

Respectfully submitted, this the 1st day of December, 2017.

<div style="margin-left: 3em;">
/s/ Caren D. Enloe  
Caren D. Enloe  
SMITH DEBNAM NARRON DRAKE  
SAINTSING & MYERS, LLP  
NC State Bar No. 17394  
PO Box 26268  
Raleigh NC 27611  
Telephone: (919)250-2000  
Facsimile: (919)250-2100  
cenloe@smithdebnamlaw.com  
*Counsel for Defendants Franklin Collection Service, Inc. and Dan Franklin*
</div>

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

In accordance with Local Rule 7.1(a), the undersigned hereby certifies that the foregoing brief has been prepared in a fourteen point, proportionally spaced, serif typeface.

In accordance with Local Rule 7.3(d)(1), the undersigned hereby certifies that the foregoing brief contains 3,502 words, exclusive of the items exempted by Local Rule 7.3(d)(1), as recorded by the word count feature of Microsoft Word 2013 word processing system used to prepare this document.

<div style="text-align: right;">

/s/ Caren D. Enloe
Caren D. Enloe
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, LLP
NC State Bar No. 17394
PO Box 26268
Raleigh NC 27611
Telephone: (919)250-2000
Facsimile: (919)250-2100
cenloe@smithdebnamlaw.com
*Counsel for Defendants Franklin Collection Service, Inc. and Dan Franklin*

</div>

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served electronically upon the following via CM/ECF:

Jonathan R. Miller
Salem Community Law Office
301 N. Main Street, Suite 2415
Winston-Salem, NC 27101
jmiller@salemcommunitylaw.com

*Counsel for Plaintiff*

This the 1st day of December, 2017.

/s/ Caren D. Enloe
Caren D. Enloe
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, LLP
NC State Bar No. 17394
PO Box 26268
Raleigh NC 27611
Telephone: (919)250-2000
Facsimile: (919)250-2100
cenloe@smithdebnamlaw.com
*Counsel for Defendants Franklin Collection
Service, Inc. and Dan Franklin*