UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

_____
                                        )
RICHARD L. WINANS, on behalf of         )
herself and all others similarly situated, )
                                        )       No. 17-CV-659(TDS)(LPA)
                Plaintiff,              )
        v.                              )       CLASS ACTION
                                        )
FRANKLIN COLLECTION SERVICE,            )
INC. and DAN FRANKLIN,                  )
                                        )
                Defendants.             )
_____ )

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### *Introduction*

Plaintiff Richard L. Winans ("Mr. Winans") has brought this action, alleging that the two Collection Letters attached to the Complaint (ECF#002 and ECF#002-1) contained false and deceptive statements as well as false threats of litigation and wage garnishment. Now, Defendants Franklin Collection Service and Dan Franklin (collectively, "Franklin") are moving for judgment on the pleadings.

In deciding Defendants' Motion, the most important documents to consider are not Plaintiff's and Defendants' competing memoranda, but the two Collection *themselves*, which, again, appear on the docket at ECF#002 and ECF#002-1. The issue presented here is not whether Franklin, in fact, is

1

a law firm (it is not)[1]. Nor is the issue whether Franklin, in fact, files lawsuits (that is a disputed question of fact that cannot be resolved at this stage).[2] Finally, the issue is not whether Franklin, in fact, was legally permitted to garnish the wages of Mr. Winans or the class members (wage garnishment is never permitted in North Carolina). Rather, the issue here is whether some uneducated, financially stressed consumers opening the Letters after a hard day's work would get the *impression* that Franklin could be a law firm; the *impression* that it could lawsuits; the *impression* that a lawsuit would be filed if the consumer failed to pay up soon; or the *impression* that wage garnishment was a possibility.

While the parties' attorneys can try their best to explain (or explain away) various words and features of the Collection Letters, in the final analysis, the arguments of well-educated, *sophisticated* attorneys do not count for much. The Court's task is to look at ECF#002 and ECF#002-1 for itself. What is important is the Court's own reaction to the Collection Letters, the words used, how everything is arranged on the page, and the overall impression created by the Letters.

---

[1] *See* Answer, ECF#010, at ¶ 48.
[2] *Compare* Complaint, ECF#001, at ¶ 48 *with* Answer, ECF#010, at ¶ 48.

2

To be clear, the Court's reaction must be shaped and guided by the proper standard, which, as explained more fully below, is the least-sophisticated-consumer standard.[3] Plaintiff respectfully submits that a proper understanding of the least-sophisticated-consumer standard, and a proper application of that standard to ECF#002 and ECF#002-1, are the keys to the outcome of this. Since, obviously, the hypothetical least sophisticated consumer does not have access to these Memoranda when he or she opens the mail and reads a collection letter, the Court may want to look for itself at ECF#002 and ECF#002-1 before even diving into the Memoranda, and ask itself, "If I were a single mother of two that stayed at the Ray Warren Homes, would I be wondering whether Franklin is a law firm or whether Franklin files lawsuits? If I had just been laid off from my manufacturing job at HAECO a week and a half before Christmas, would I be worried I might get sued if I didn't pay ASAP? If I were an immigrant from the Sudan with a basic familiarity – but not a perfect understanding – of the American civil justice system, would I be wondering whether my wages were about to be garnished or my car was about to be attached?"

Viewed from these vantage points – which is what the least-sophisticated-consumer standard requires – Plaintiff respectfully submits

---

[3] *See Russell v. Absolute Collection Servs.*, 763 F.3d 385, 394 (4th Cir. 2014).

3

that it is impossible to imagine any of these hypothetical consumers perceiving the Collection Letters as anything except threats of litigation, asset attachment, and wage garnishment. For this reason, and for the reasons that follow, Mr. Winans respectfully asks this Court to deny Defendants' Motion for Judgment on the Pleadings in full.

## *Standard of Review*

There is no practical difference between a motion for judgment on the pleadings for failure to state a claim, and a motion to dismiss for failure to state a claim.[4] The purpose of each is to test the sufficiency of a complaint,[5] and neither should be granted unless the Court is certain that the plaintiff will never prove any set of facts upon which he might succeed.[6] All well-pleaded allegations in a plaintiff's complaint are to be accepted as true.[7] Put another way, the purpose of a Rule 12(b)(6) or Rule 12(c) Motion for failure to state a claim is to resolve legal questions, not factual questions.

"Whether a communication is false, misleading, or deceptive in violation of [15 U.S.C.] § 1692e is determined from the vantage of the least sophisticated consumer. . . . The least-sophisticated-consumer test is an objective standard that evaluates § 1692e claims based upon how the least

---

[4] *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).
[5] *Id.*
[6] *Id.* at 244.
[7] *Id.*

4

sophisticated consumer would interpret the allegedly offensive language. . . ."[8] It is an objective standard.[9] The least-sophisticated-consumer is "grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes."[10]

The Fourth Circuit "has never directly addressed whether application of the objective least-sophisticated-consumer test to the language of a dunning letter is a question of law," it has assumed that to be the case, even as it has acknowledged that decisions of other circuits on this issue "are not harmonious."[11] At least one district court within this Circuit has suggested that, because "dismissal pursuant to Rule 12(b)(6) is disfavored," a court should place a thumb on the scale in favor of an FDCPA plaintiff, assuming that the allegations of are well-pleaded.[12]

## *Argument*

Plaintiff's Complaint alleges that Collection Letters A and B are misleading is several distinct, but mutually reinforcing, ways. First of all, Plaintiff alleges that the Letters convey the false impression that Franklin is

---

[8] *Russell*, 763 F.3d at 394-95 (internal quotation marks and citations omitted).
[9] *Id.* at 395.
[10] *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).
[11] *Russell*, 763 F.3d at 395.
[12] *See Dykes v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 739, 743-44 (E.D. Va. 2015).

5

a law firm. Second, Plaintiff alleges that both Letters are false threats of litigation, when in fact neither Franklin nor its clients ever intended to sue the consumers who received the Letters. Finally, Plaintiff alleges that Collection Letter B is a false threat of asset attachment and wage garnishment, when in fact neither Franklin nor its clients were legally entitled to attach assets or garnish wages.

A collection letter violates § 1692e(5) of the FDCPA if (1) the least sophisticated consumer would reasonably believe that the letter threatens legal action, and (2) the debt collector does not intend to take legal action, or the threatened action is not permitted by law.[13] Defendant's Memorandum argues that all of Plaintiff's claims should be dismissed because, as a matter of law, the least sophisticated consumer would not interpret the Collection Letters the way that the Complaint alleges he or she would read them.

Exactly how does an attorney go about making an intelligible argument about whether a text would give a certain person (and a *hypothetical* person at that) one or another impression? Defendants' Memorandum in support of its motion illustrates the difficulty. Essentially, Franklin's entire argument consists of one conclusory statement after another:

- "[T]he term 'collection firm' and [the Collection Letter's] description of its unique identifier as a

---

[13] *See United States v. National Fin. Servs.*, 98 F.3d 131, 135 (4th Cir. 1996).

'case' number are not false or misleading, nor do they imply that Franklin is a law firm."[14]

- "[T]here is nothing in the tone or content of this language which is deceptive, abusive or harassing."[15]

- "Nothing in the two sentences relied upon by the Plaintiff suggests or threatens current or imminent litigation."[16]

- "[T]he Second Letter does not state or imply that legal action is imminent, ongoing, contemplated in the near future, or even a possibility . . . ."[17]

- "The Second Letter does not state that a lawsuit has been filed, or imply that a lawsuit is imminent."[18]

- "To suggest that the two unchecked boxes coupled with the words 'further procedures' implied or expressly suggested Franklin would attach assets or garnish wages is a quantum and far-fetched leap even for the sophisticated consumer . . . ."

- "There is nothing in the Second Letter which suggests that the debt collector would contact the consumer's employer or that the debt collector even knew who the consumer's employer was for that matter. Under these circumstances, there is nothing to suggest that Franklin made implied threats to impermissibly contact Plaintiff's employer . . . ."[19]

---

[14] Defendants' Memorandum, ECF#014, at 6.
[15] *Id.* at 9.
[16] *Id.* at 10.
[17] *Id.* at 11.
[18] *Id.*
[19] *Id.* at 13.

7

And lawyers are not the only ones who have difficulty explaining the reasons for their decisions that do anything more than beg the question to be answered. Plaintiff submits, will all due respect, that courts, as well, sometimes resort to these sorts of conclusory arguments in support of their Fair Debt Collection Practices Act ("FDCPA")[20] decisions. In Plaintiff's opinion, that would include the three courts (none of which are in this Circuit) that have reviewed – and approved – the letter identified in the Complaint as Collection Letter A.[21]

Above, this Memorandum argued that, above all else, it is the Court's own reaction to the Collection Letters that will determine the outcome here, and that is true. But the law requires the a court's reaction to be shaped and guided by the least-sophisticated-consumer standard – indeed, if a court's

---

[20] 15 U.S.C. § 1692 *et seq.*
[21] *See Clark v. Franklin Collection Serv.*, 14-cv-8067, 2015 U.S. Dist. LEXIS 70944 at *5 (D.N.J. June 2, 2015) ("There is nothing in the tone or content of the letter that is abusive or harassing. . . . The letter does not make any statement that would coerce or mislead even the least sophisticated debtor into thinking he would have to pay the debt in order to avoid some immediate consequence."). *See also Rivera v. Franklin Collection Servs.*, 2017 U.S. Dist. LEXIS 112105 at *8 (E.D. Pa. July 19, 2017) ("The letter here is more like the letter in *Clark* . . . because the letter sent by Franklin to Rivera contains no threat to take any action that cannot legally be taken, nor does it contain false representations or deceptive means to attempt to collect a debt."); *Covington v. Franklin Collection Servs.*, 2016 U.S. Dist. LEXIS 103601 at *5-6 (D. Kan. Aug. 5, 2016) ("Plaintiff contends that the court should not follow *Clark* because the decision is 'conclusory' and does not accurately apply the 'least sophisticated consumer' standard. Assuming without deciding that the least-sophisticated-standard-consumer [sic] applies to the issue . . . the court finds the *Clark* court's application of that standard persuasive and finds its conclusion sound.").

8

reaction was *not* guided by some kind of standard, its decision would not really be "law" at all.

For this reason, it is worth examining the least-sophisticated-consumer standard in greater detail. As noted above, the least-sophisticated-consumer standard is an "objective" standard. The word "objective" is a possible source of confusion, however. The standard has nothing to do with determining the "objective" (as in, authoritative, true, or one-and-only) meaning of the text of the Collection Letter. Rather, the least-sophisticated-consumer standard is "objective" in the same way that the reasonable-person standard employed in garden-variety negligence cases is "objective." That is, both standards require one to construct an archetype – a fictional character, pieced together from the real people one has known – and then to imagine what that fictional character does or thinks.

Courts, scholars, and law students occasionally obsess over the question, "Who is the reasonable person I keep hearing about?" Similarly, it behooves anyone tasked with applying the least-sophisticated-consumer standard to spend some time imagining who this least sophisticated consumer might be. This is something which Defendant's Memorandum – and, respectfully, the *Clark*, *Rivera*, and *Covington* Courts[22] – never takes the

---

[22] *See supra* note 21.

time to do. The precise wording of *Russell* is instructive here: "Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined *from the vantage of* the least sophisticated consumer."[23] In other words, it is not enough to conjure an image of the least sophisticated consumer, and then observe how this figment reacts to the Collection Letter; "from the vantage of" means that a Court should actually try to step into shoes of the least sophisticated consumer they construct, and try to experience the Letter the way that person would experience it. In other words, applying the least-sophisticated-consumer standard is an exercise in empathy, which itself is always an exercise of the imagination.

The attorney writing this brief, drawing from his own personal experiences of clients, family members, and acquaintances, imagines the "least sophisticated consumer" to look something like one of the examples listed above: Like a single mother living in public housing; like a factory worker who has been laid off; or like an immigrant whose primary language is something other than English. To this attorney, the "least sophisticated consumer" also bears a resemblance to high-school classmates whose education ended with community college, and to his grandmother in the years before she died.

---

[23] *Russell*, 763 F.3d at 394 (emphasis added) (internal quotation marks and citation omitted).

10

From these snippets of experience, I construct an archetype of the least sophisticated consumer as someone who is a hard worker and a decent person, but who has fallen on hard times; someone who wants to pay their bills and already feels guilty that he/she hasn't done so; someone who has little or no education beyond a high-school diploma; someone who has had almost no contact with our judicial institutions, who doesn't understand them very well, and who is a little intimidated by them; someone who reads very little except for what they seek on Facebook; someone who already has at least two or three crises they are dealing with; someone who is either stressed out because she is working two or three jobs, or who is depressed because he doesn't have any job.

Now imagine *that* person ripping open an envelope and reading ECF#002. The letter says, in essence, "You'd better talk to your lawyer." In every TV show and movie she's ever seen, that's a threat – a thinly veiled threat, but a threat nonetheless. One can imagine the person's heartrate quickening as she realizes that if she can't come up with $300 she doesn't have, she's going to get sued, and maybe even arrested.[24]

---

[24] This attorney has regularly found it necessary to explain to North Carolina clients sued by debt collectors that they cannot be arrested for failing to pay a debt.

From where the "least sophisticated consumer" stands, none of that is bizarre or idiosyncratic; it is completely normal. In fact, as explicitly alleged in Plaintiff's Complaint,[25] this is precisely the message that Franklin intended to communicate. A truly bizarre and idiosyncratic response would have been for the least sophisticated consumer to grab the nearest dictionary and conduct a detailed exegesis, then look up, take off her glasses, and say, "Why, they do not mean to say that I am going to need a lawyer because they are going to sue me; they are merely advising me that I have the option of speaking to a lawyer about this matter. How helpful!"

The same thing can be said about the least-sophisticated consumer ripping open an envelope after a hard day's work, only to find ECF#002-1. The bizarre and idiosyncratic version: "I am so glad Franklin sent me this letter to advise me that it hardly ever sues people. Moreover, Franklin has not checked up to see who my employer is, or located any of my assets. I can now rest easily." The completely normal version: "My God, they're saying if I don't pay up soon, they're going to take me to court. Does this checkbox mean that they're coming after my property? If the sheriff tows away my car, how will I get to work?"

---

[25] *See* ECF#001 at ¶ 9.

A final note: As evidenced by the many question marks in the preceding paragraphs, the least-sophisticated-attorney, as this attorney has imagined her, is not *certain* that she will be sued; rather, the Collection Letters have caused her to *worry* that she will be sued. And that is enough to conclude that the Letters constitute "threats." Similarly, the least-sophisticated-consumer does not necessarily *believe* that Franklin is a law firm, but the Letters do raise that question in her mind, which feeds into her fears that she will be sued. Again, that is enough to conclude that the Letters are "misleading." "[C]ourts have held that collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is accurate."[26] This is not only because the least-sophisticated-consumer might arrive at the incorrect interpretation, but also because the least-sophisticated-consumer might not know which interpretation is correct. Similarly, a threat does not have to create certainty of consequences – it need only create fear of possible consequences. Indeed, most human fears are rooted in *uncertainty*, as opposed to the *certainty* that something bad will happen.

Finally, this Memorandum must say a few words in response to part III.B of Defendants' Memorandum, which argues that, failing everything else, all claims should be dismissed as to the natural person, Dan Franklin. As

---

[26] *Clomon*, 988 F.2d at 1319.

Defendants' correctly point out, Plaintiff has not alleged that the corporate veil should be pierced. However, Defendants' contention, on page 14 of its Memorandum, that the Complaint does not allege that Dan Franklin was "personally involved with the debt collection efforts against the Plaintiff," is incorrect. Paragraph 55 of the Complaint specifically alleges that "Mr. Franklin drafted and/or approved the use of both Collection Letter A and Collection Letter B." An individual owner or officer of a debt-collection company can be held individually liable for violations of the FDCPA to the extent that he actually participated in those violations.[27] Therefore, Plaintiff's FDCPA claims against Dan Franklin survive.

As to the North Carolina Collection Agency Act claims, Defendant argues that Dan Franklin does not fit the definition of "collection agency," as that term is defined in N.C. Gen. Stat. § 58-70-15(a). But whether Dan Franklin is a "collection agency" hardly matters because, if he is not, then he is most certainly a "debt collector" as defined by N.C. Gen. Stat. § 75-50(3), as alleged in ¶ 21 of the Complaint. And while "debt collectors" are not subject to all of the rules that govern "collection agencies," they *are* subject to the "collection agency" rules at issue in this case.[28] And the damages available to

---

[27] *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436-38 (6th Cir. 2008) (citing cases).
[28] *See* Complaint, ECF#001, at ¶¶ 79 & 87.

14

plaintiffs are identical under both the "collection agency" statute and the "debt collector." The long and the short of it is that Plaintiff has state-law claims against Dan Franklin; whether he is liable as a "collection agency" or liable as a "debt collector" is purely an academic point.

*Conclusion*

As more fully explained above, application of the least-sophisticated-consumer standard is, above all, an act of empathy. Plaintiff respectfully submits that anyone who takes the time and energy to visualize who the least-sophisticated-consumer actually is, and who takes the time and energy to try to read the Collection Letters from his or her vantage point, cannot honestly deny that Collection Letters would cause that poor, hypothetical soul to wonder whether Franklin is a law firm, and to panic over the possibility that he or she might be sued. Anything else is "just a failure of imagination."[29] For these reasons, Plaintiff respectfully requests this Court to deny Defendants' Motion in full.

Dated: December 22, 2017
      Winston-Salem, N.C.

Respectfully submitted,

SALEM COMMUNITY LAW OFFICE

By: /s/ Jonathan R. Miller
     Jonathan R. Miller
     One of Plaintiff's Attorneys

---

[29] Graham Greene, THE POWER AND THE GLORY (Penguin Classics, 2003) at 131.

15

Case 1:17-cv-00659-TDS-LPA   Document 17   Filed 12/22/17   Page 15 of 18

**Attorneys for Plaintiff**
Jonathan R. Miller
N.C. Bar No. 48224
Salem Community Law Office
301 N. Main St., Suite 2415
Winston-Salem, NC 27101
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
brian@bromberglawoffice.com

16

# CERTIFICATE OF COMPLIANCE
# WITH TYPEFACE AND LENGTH LIMITATIONS

In accordance with Local Rule 7.1(a), the undersigned hereby certifies that the foregoing brief has been prepared in a thirteen point, proportionally spaced typeface.

In accordance with Local Rule 7.3(d)(1), the undersigned hereby certifies that the foregoing brief contains 3,303 words, exclusive of the items exempted by Local Rule 7.3(d)(1), as recorded by the word count feature of Office 365/Microsoft Word, which is the processing system used to prepare this document.

/s/ Jonathan R. Miller
Jonathan R. Miller
N.C. Bar No. 48224
Salem Community Law Office
301 N. Main St., Suite 2415
Winston-Salem, NC 27101
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served electronically upon the following via CM/ECF:

Caren D. Enloe    cenloe@smithdebnamlaw.com

This the 22nd day of December, 2017.

>/s/ Jonathan R. Miller
Jonathan R. Miller
N.C. Bar No. 48224
Salem Community Law Office
301 N. Main St., Suite 2415
Winston-Salem, NC 27101
Tel: (336) 837-4437
Fax: (336) 837-4436
jmiller@salemcommunitylaw.com