IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD L. WINANS, on behalf )
of himself and all others )
similarly situated,[1] )
)
            Plaintiff, )            17cv659
)
      v. )
)
FRANKLIN COLLECTION SERVICE, )
INC. And DAN FRANKLIN, )
)
            Defendant. )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a civil action arising from the debt collection
activities of the Defendants, Franklin Collection Service, Inc.
("FCSI") and Dan Franklin.  Plaintiff Richard L. Winans brings
this action on behalf of himself and others similarly situated,
alleging that the Defendants' debt collection activities violated
the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692
et seq., the North Carolina Collection Agencies Act ("NCCAA"),
N.C. Gen. Stat. § 58-70-1 et seq., and the North Carolina Debt
Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50 et seq.  (Doc.
1.)  Defendants now move for judgment on the pleadings pursuant to
Federal Rule of Civil Procedure 12(c).  (Doc. 13.)  For the reasons
set forth below, the motion will be granted and the action

---

[1] The complaint refers to "herself," which appears to be a misnomer.

dismissed.

**I.    BACKGROUND**

The allegations of the complaint, which are accepted as true
and viewed in the light most favorable to Winans for purposes of
the present motion, show the following:

FCSI operates a debt collection business with its principal
place of business located in Mississippi.  (Doc. 1 ¶ 12; Doc. 10
¶ 12.)   Dan Franklin is the president, sole officer (chief
executive officer), shareholder, and director of FCSI.  (Doc. 1
¶ 17; Doc. 10 ¶ 17.)   FCSI holds a license to operate as a
collection agency in North Carolina and conducts debt collection
activities within the state.  (See Doc. 1 ¶¶ 15, 28; Doc. 10 ¶¶ 15,
28.)

At some point during 2015, Winans became unable to pay his
cell phone bill from AT&T.  (Doc. 1 ¶ 25.)   Winans used his cell
phone exclusively for personal, family, and/or household purposes.
(Id. ¶ 26.)   His AT&T account became past due in the amount of
$289.58.  (Id. ¶ 27.) Sometime in early 2016, AT&T placed Winans's
account with FCSI for collection.  (Id. ¶ 28.)

On May 18, 2016, Winans received a debt collection letter
from Defendants (the "first letter").  (Id. ¶ 29; Doc. 2.)   The
letter lists the name of the sender as "The Collection Firm of
Franklin Collection Service, Inc." and includes a unique
identification number referred to as a "FCSI case #."   (Doc. 1

2

¶¶ 30-31; Doc. 2 at 2.)  The second full paragraph of the letter states, "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [FCSI's phone number]."  (Doc. 1 ¶ 32.)

On July 21, 2016, Winans received another letter from Defendants (the "second letter").  (Id. ¶ 38; Doc. 2-1.)  The second letter, printed in red, similarly lists the name of the sender as "The Collection Firm of Franklin Collection Service, Inc." and refers to an "FCSI case number."  (Doc. 1 ¶ 39.)  The body of the letter states in relevant part:

> WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS
> LETTER VOLUNTARILY, YET IT GOES UNSATISFIED AS OF THE
> DATE ON THIS NOTICE.  WE SELDOM RESORT TO LITIGATION IF
> THE ACCOUNT IS RESOLVED IN A TIMELY MANNER.  AT THIS
> TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT
> OBTAINED.

(Id. ¶ 40.)  To the right of the main paragraph, there are two checkboxes labeled, "Employment Verified" and "Assets Located." (Id. ¶ 41.)  Neither checkbox is checked.  (Id.)  At the bottom of the collection letter it states, "TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO FRANKLIN COLLECTION SERVICE, INC."  (Id. ¶ 42.)

Based on these two letters, Winans filed suit against FCSI and Franklin, alleging (1) the first letter violated several provisions of the NCCAA and NCDCA; and (2) the second letter violated several provisions of the FDCPA as well as the NCCAA and

NCDCA.  (Doc. 1.)  Defendants filed an answer and now move for judgment on the pleadings.  (Doc. 10; Doc. 13.)

## II.  ANALYSIS

### A.  Standard of Review

"A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact."  Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014)).  The court "accept[s] all well-pleaded allegations of [the] complaint as true and draw[s] all reasonable factual inferences in [the plaintiff's] favor."  Id. (citation omitted).[2]  In applying those standards, "the complaint will survive only if it 'states a plausible claim for relief.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

Section 1692e of the FDCPA prohibits debt collectors from making "false, deceptive, or misleading" statements in connection with their debt collection activities and outlines sixteen illustrative examples of prohibited conduct.  15 U.S.C. § 1692e; Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014); see also 15 U.S.C. § 1692a (defining terms).  "Whether a communication is false, misleading, or deceptive in

---

[2] Winans has attached copies of the two debt collection letters to his complaint (Docs. 2, 2-1), which the court may consider for purposes of this motion.  Fed. R. Civ. P. 10(c); Sec'y of State for Defence v. Trimble Navig. Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

violation of § 1692e is determined from the vantage of the 'least sophisticated consumer.'" Russell, 763 F.3d at 394 (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)). "The least-sophisticated-consumer test is an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." Id. at 394-95. "Given the objective nature of this inquiry, a district court's application of the least sophisticated consumer test ordinarily presents a question of law . . . ." Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC, 593 F. App'x 204, 208 (4th Cir. 2014); Russell, 763 F.3d at 395 ("Although we have never directly addressed whether application of the objective least-sophisticated-consumer test to the language of a dunning letter is a question of law, we have assumed that to be the case."). "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Nat'l Fin. Servs., Inc., 98 F.3d at 136.

North Carolina has enacted two separate statutes regulating debt collection practices. The NCCAA regulates collection agencies and prohibits deceptive representations or threatening or coercive conduct regarding the collection of a debt. N.C. Gen. Stat. §§ 58-70-95, 58-70-110; see also id. §§ 58-70-15, 58-70-

90(1) (defining "collection agency").  The NCDCA also prohibits all other persons who collect consumer debts from engaging in similar activities.  N.C. Gen. Stat. §§ 75-51, 75-54; see also id. § 75-50(3) (defining "debt collector").  The statutes each provide illustrative examples of prohibited conduct.  N.C. Gen. Stat. §§ 58-70-95, 58-70-110, 75-51, 75-54.

Here, Defendants do not dispute that FCSI's debt collection activities fall within the scope of the FDCPA and NCCAA, (see Doc. 10 ¶¶ 13-14), but they contend that Winans fails to allege that the debt collection letters give rise to a plausible claim under either the state or federal statutes.  Defendants do dispute whether Franklin may be held liable individually.  They argue that Franklin cannot be held liable for any alleged FDCPA or NCCAA violations because Winans failed to allege sufficient facts to either pierce the corporate veil or suggest that Franklin was personally involved in the debt collection process.  (Doc. 14 at 14-15.)  Further, while Defendants claim that Franklin does not qualify as a "collection agency" as defined in N.C. Gen. Stat. §§ 58-70-15, 58-70-90(1), they have not addressed whether he could be liable as a "debt collector" under N.C. Gen. Stat. § 75-50(3), as Winans also alleges.  (See Doc. 1 ¶¶ 21, 79, 87.)  The court can assume without deciding that Franklin may be held liable for FCSI's debt collection activities under the FDCPA and state

analogues because, for the reasons that follow, Winans's claims
fail.

Before turning to Winans's claims, it must be noted that the
court's analysis is confounded by Winans's citation generally to
various statutes relating to his potential claims under both
federal and state law in his complaint (id. ¶¶ 64-69, 73-79, 83-
87) without specifying which provision or provisions he relies on
within the context of his individual allegations (id. ¶¶ 70, 80,
88). In his brief on the instant motion, Winans offers no
additional indication of which individual provision(s) he relies
on to support any particular claim, apart from referencing 15
U.S.C. § 1692e(5). (See Doc. 17 at 6.) He also offers little
case law. It is the job of counsel, not the court, to identify
these things.

With this understanding, the court turns to each of the
complaint's principal allegations with respect to each of the debt
collection letters.

**B. First Letter**

Winans alleges that Defendants violated several provisions of
the NCCAA and NCDCA by sending the first letter. (Doc. 1 ¶¶ 83-
88.)[3] First, he alleges that the letter falsely represents that

---

[3] While Winans cites to several requirements set forth in the NCDPA (Doc.
1 ¶ 87), he references only the NCCAA in his specific allegations (id.
¶ 88). Nevertheless, the court will address each of the principal
allegations in the complaint under both statutes.

FCSI was a law firm. Winans relies on the fact that the letter refers to "The Collection Firm of Franklin Service, Inc.," and includes FCSI's "case" number, claiming that these references "reinforce[d] the impression that FCSI is a law firm treating Plaintiff's AT&T account as a legal case." (Id. ¶¶ 30-31, 35). Winans appears to allege that this activity violates the NCCAA and NCDCA by "[f]alsely representing the status or true nature of the services rendered by the collection agency [or debt collector]." N.C. Gen. Stat. §§ 58-70-110(7), 75-54(7).

These alleged representations do not give rise to an actionable claim under the NCCAA or NCDCA. The use of the word "firm" is by no means exclusive to the legal profession, and the term "collection firm" is merely a descriptive reference to FCSI's business. Apart from the reference to a "collection firm," the letter makes no other reference to a firm and specifically identifies FCSI as a corporation and a "debt collector." (Doc. 2 at 2.) In addition, each reference to a case number is preceded by a reference to "FCSI," which removes the possible inference that the "case number" originated from a court of law. (Id.) When interpreting substantively identical language in debt collection letters under the FDCPA, at least two district courts have specifically rejected claims that such references impermissibly imply that FCSI is a law firm or otherwise are false or misleading. Brunett v. Franklin Collection Serv. Inc., No. 18-CV-163-JPS, 2018

WL 2170334, at *5 (E.D. Wis. May 10, 2018) (finding that the use of identical language did not give rise to a violation of 15 U.S.C. § 1692e(3) by falsely representing that FCSI was a law firm); Bradley v. Franklin Collection Serv., Inc., No. 5:10-cv-01537-AKK, 2013 WL 1346714, at *13 (N.D. Ala. Mar. 28, 2013) (same), aff'd in part and rev'd on other grounds, 739 F.3d 606 (8th Cir. 2014).

Winans further alleges that the language within the second full paragraph in the first letter violated applicable state law by threatening that FCSI would file a lawsuit against the consumer when neither FCSI nor AT&T intended to do so. (Doc. 1 ¶¶ 32-34, 88.); see N.C. Gen. Stat. §§ 58-70-95(7), 58-70-110(4), 75-51(7), 75-54(4). The second paragraph states in relevant part, "IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL [FCSI's phone number]." (Doc. 1 ¶ 32.) Winans appears to allege that this language violates the NCCAA and NCDCA by "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made," N.C. Gen. Stat. §§ 58-70-95(7), 75-51(7), and falsely representing the status of any legal proceeding or the creditor's rights or intentions, id. §§ 58-70-110(4), 75-54(4).

When interpreting substantively similar language under the FDCPA, five district courts have held that it did not impermissibly

threaten litigation. <u>Brunett v. Franklin Collection Serv. Inc.</u>, No. 18-CV-163-JPS, 2018 WL 2170334, at *3-4 (E.D. Wis. May 10, 2018); <u>Hanford v. Franklin Collection Serv., Inc.</u>, No. 4:17-CV-2005-SNLJ, 2018 WL 2129612, at *4 (E.D. Mo. May 9, 2018); <u>Rivera v. Franklin Collection Servs., Inc.</u>, No. CV 17-631, 2017 WL 3075085, at *3 (E.D. Pa. July 19, 2017); <u>Covington v. Franklin Collection Servs., Inc.</u>, No. 16-2262-JWL, 2016 WL 4159731, at *3 (D. Kan. Aug. 5, 2016); <u>Clark v. Franklin Collection Serv., Inc.</u>, No. 14-CV-8067, 2015 WL 3486767, at *3 (D.N.J. June 2, 2015). Instead, these courts found that "[t]he letter merely provided the plaintiff with his options without coercing or misleading the least sophisticated debtor into thinking that he was required to either pay or suffer dire consequences." <u>Rivera</u>, 2017 WL 3075085, at *3; <u>see</u> Brunett, 2018 WL 2170334, at *3-4. The court agrees with this line of cases.[4] Nothing in the cited language of the first letter would suggest to the least sophisticated consumer that FCSI was impermissibly threatening litigation.

For these reasons, the court finds that Winans has failed to state a claim under either the NCCAA or NCDCA arising from the

---

[4] Winans's complaint also alleges that the first letter violates the NCCAA and NCDPA by "[f]alsely stating that FSCI [sic] sometimes files civil lawsuits against consumers." (Doc. 1 ¶ 88.) Apart from instructing the consumer to "contact your attorney regarding our potential remedies," the letter contains no other reference to civil litigation, much less FCSI's propensity to file civil lawsuits. Winans offers no argument to support this allegation, nor can the court discern how this letter would give rise to such a representation.

alleged misrepresentations and language within the first letter.

**C.   Second Letter**

With regard to the second letter, Winans alleges several violations of the FDCPA, NCDCA, and NCCAA.  He claims that the second letter (1) falsely represents that FCSI was a law firm; (2) impermissibly threatens to take legal action against the recipient when neither FCSI nor AT&T intended to do so; (3) impermissibly threatens to garnish wages and/or seize assets belonging to the consumer; and (4) improperly threatens to contact Winans's employer regarding his debt.  (Doc. 1 ¶¶ 70, 80.)[5]  Each of these alleged violations will be addressed in turn.

**1.   False Representation that FCSI is a Law Firm**

Relying on FCSI's use of the term "collection firm" and reference to "case" number, Winans again alleges that the second letter falsely represents that FCSI was a law firm in violation of both the FDCPA and state law.  (Doc. 1 ¶¶ 70, 80); see 15 U.S.C. § 1692e(3); N.C. Gen. Stat. §§ 58-70-110(7), 75-54(7).  Section 1693e(3) prohibits a debt collector from making "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."  15 U.S.C.

---

[5] Winans also alleges that the second letter falsely claims that FCSI "sometimes files lawsuits against consumers," relying on the fact that FCSI is not a law firm.  (Doc. 1 ¶ 48.)  This language is not present in the letter, which rather states "WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER." (Doc. 2-1 at 2.)  As with the first letter, Winans offers no argument or case law in his response to support this allegation, and the court can discern none.

§ 1693e(3). Apart from the reference that "WE SELDOM RESORT TO LITIGATION," the letter otherwise contains no other reference that would arguably suggest that either FCSI is a law firm or the communication is from an attorney. (Doc. 2-1 at 2.) For reasons similar to those previously discussed regarding the first letter, the court finds that Winans has failed to state a claim under either federal or state law with regard to any alleged misrepresentation on these grounds. See Brunett, 2018 WL 2170334, at *5; Bradley, 2013 WL 1346714, at *13.

### 2. Threat of Litigation

Winans alleges that the second letter violated portions of the FDCPA and NCDCA by threatening to take legal action against him and other putative class members when neither FCSI nor AT&T intended to do so. (Doc. 1 ¶¶ 70, 80). Winans claims that the least sophisticated consumer would interpret the letter to imply that failure to pay the total due would result in FCSI engaging in further "procedures" to collect the debt, which Winans says is code for legal action. In particular, Winans relies on the following language:

> WE HAVE MADE SEVERAL ATTEMPTS FOR YOU TO RESOLVE THIS MATTER VOLUNTARILY, YET IT GOES UNSATISFIED AS OF THE DATE ON THIS NOTICE. WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY MANNER. AT THIS TIME, THERE HAS BEEN NO CIVIL ACTION FILED OR JUDGMENT OBTAINED. [. . .]
>
> TO BE SURE OF PROPER CREDIT AND TO STOP FURTHER

PROCEDURES, RETURN THIS NOTICE WITH PAYMENT IN FULL TO
FRANKLIN COLLECTION SERVICE, INC.

(Doc. 2-1 at 2; Doc. 1 ¶ 40.) Winans claims that the least sophisticated consumer would interpret the letter to imply that "FCSI sues consumers who do not timely pay, that the recipient has not timely paid, and that, therefore, the recipient will face the 'further procedure' of a lawsuit if he does not pay immediately." (Doc. 1 ¶ 49.) Winans appears to allege that FCSI's text violates 15 U.S.C. § 1692e(5) and (10) and N.C. Gen. Stat. §§ 58-70-95(7), 58-70-110(4), 75-51(7), 75-54(4). Defendants argue that this language does not suggest an imminent or actual threat of litigation so as to give rise to a violation of the FDCPA. (Doc. 14 at 10-11.) Under the same rationale, Defendants contend that the letter does not violate the NCDCA. (Id. at 11.)

Debt collection letters will not violate § 1692e(5) unless the least sophisticated consumer "would reasonably believe that the notices threaten legal action." Nat'l Fin. Servs., 98 F.3d at 135. "For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." Jenkins v. Union Corp., 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993) (noting the threatened legal action must be "authorized, likely and imminent"

to give rise to a violation of § 1692e(5)). "Even indirect or oblique threats give rise to liability, provided they indicate that 'legal action is underway or contemplated in the near future.'" Combs v. Direct Mktg. Credit Servs., Inc., 1998 WL 911691, at *2 (7th Cir. 1998) (quoting Jenkins, 999 F. Supp. at 1136). While the "standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor," "[e]ven the 'least sophisticated consumer' can be presumed . . . to read a collection notice with some care." Powell v. Comput. Credit, Inc., 975 F. Supp. 1034, 1039 (S.D. Ohio Jul. 24, 1997) (citations omitted).

Here, the second letter, while referencing litigation, contains no explicit statement that legal action is underway, either now or in the future. It clearly states that there is "NO CIVIL ACTION FILED OR JUDGMENT OBTAINED" against the recipient, and it offers no indication of when any legal action or further "procedures" would be taken. Cf. Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 25-26 (2d Cir. 1989) (finding violation of § 1692e(5) where letter indicated that debt "Has Already Been Referred for Collection Action" and "We Will At Any Time After 48 Hours Take Action As Necessary And Appropriate To Secure Payment In Full").

The question is whether the inclusion of the phrasing, "WE SELDOM RESORT TO LITIGATION IF THE ACCOUNT IS RESOLVED IN A TIMELY

MANNER," when coupled with the other representations of "FURTHER PROCEDURES" as well as the admonition in the first letter to "CONTACT YOUR ATTORNEY," suggests the negative pregnant — that FCSI *will likely* resort to litigation if the account is not resolved timely. Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, at 302 (E.D.N.Y. 2008) ("To determine whether a communication from a debt collector constitutes a threat, the reviewing court should look to the language used as a whole." (citations omitted)). As the Fourth Circuit has noted in the context of § 1692g, "[t]here are numerous and ingenious ways of circumventing [the law] under a cover of technical compliance." Nat'l Fin. Servs., 98 F.3d at 138 (alterations in original) (quoting Miller v. Payco-General Am. Credits, Inc., 943 F.2d 482, 485 (4th Cir. 1991)). Therefore, the court must carefully assess whether a communication nevertheless has the effect of undermining the protections of the debt collection laws. On the other hand, courts must be mindful that debtors who are already overdue on payment cannot be expected to readily respond to mere invitations to pay, and thus legitimate forms of persistence may be allowed. Madonna v. Acad. Collection Serv., No. 95-CV-00875, 1997 WL 530101, at *8 (D. Conn. Aug. 12, 1997) (Cabranes, J., sitting by designation) (noting that "[i]t would be counterproductive to penalize a debt collector for suggesting that steps which legally could be taken might in fact be taken" (quoting Sluys v. Hand, 831 F. Supp. 321, 326 (S.D.N.Y.

Sept. 13, 1993))).

While a closer question, the court concludes that even the least sophisticated consumer should not reasonably conclude that FCSI's letters impermissibly threaten litigation.

"Seldom" means "on few occasions, in few cases or instances, not often; rarely, infrequently." Oxford English Dictionary Online, http://www.oed.com/view/Entry/175021?redirectedFrom=seldom. The letter's admonition that litigation is "seldom resort[ed] to . . . if the account is resolved in a timely manner" (Doc. 2-1 at 2) certainly suggests that litigation remains at least a possibility. But, as to the imminence of legal action, the letter does not imply any more than that. The letter only expressly states that if the account is not satisfied "voluntarily" and "timely," "further procedures" are likely to occur. (Id.)

Although Winans does not argue it, the court notes that the antonyms of "seldom" include "often," Webster's Third New International Dictionary 2058 (1986), as well as "frequently" and "usually," Roget's 21st Century Thesaurus in Dictionary Form 743 (3d ed. 2005). However, it does not reasonably follow from the language of the second letter that if the debt is not resolved timely, litigation is likely. See Avila v. Riexinger & Assocs., LLC, 644 F. App'x 19, 22 (2d Cir. 2016) (holding that letter did not violate § 1962e(5) where letter indicated that "the debt collector 'may consider additional remedies' and that the accounts

16

were placed with an attorney for 'such action as necessary'"
(emphasis in original)); Madonna, 1997 WL 530101, at *6–9 (finding
that statement, "[f]ailure to comply may result in our informing
our client that you have refused to cooperate, they may pursue
legal action," did not constitute an impermissible threat to pursue
legal action); Knowles v. Credit Bureau of Rochester, Div. of
Rochester Credit Ctr., No. 91-CV-14S, 1992 WL 131107, at *1
(W.D.N.Y. May 28, 1992) (finding that statement, "FAILURE TO PAY
WILL LEAVE OUR CLIENT NO CHOICE BUT TO CONSIDER LEGAL ACTION,"
threatened "no action whatsoever"); Riveria v. MAB Collections,
682 F. Supp. 174, 178–79 (W.D.N.Y. 1988) (finding that language,
"YOU LEAVE US NO CHOICE BUT TO ADVISE YOUR CREDITOR THAT YOU HAVE
IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN
ORDER TO COLLECT THIS BIL [sic]," did not constitute an improper
threat of litigation).

The letters in this case can be distinguished from those that
implied either that litigation was inevitable or that the debt
collector would pursue all legal remedies. Cf. Huling v. Franklin
Collection Service, Inc., No. 1:16CV-0370-CC-JSA, 2016 WL 4803196
(N.D. Ga. Sept. 13, 2016) (denying motion to dismiss and finding
fact issue existed as to intent to seek legal action where FCSI
letter contained similar language to the first letter but included
additional statement that debt "WILL BE PURSUED TO A CONCLUSION!");
Larsen, 533 F. Supp. 2d at 302 (finding that statement, "WARNING:

You may be sued 30 days after the date of this notice if you do not make payment," signed by an attorney, constituted an impermissible threat of litigation); Bentley, 6 F.3d at 62-63 (holding that statement, "THEY HAVE INSTRUCTED US TO PROCEED WITH WHATEVER LEGAL MEANS IS NECESSARY TO ENFORCE COLLECTION," would reasonably be interpreted by least sophisticated consumer as threat of imminent litigation); Nat'l Fin. Servs., 98 F.3d at 136 (finding impermissible threats where letters from attorney contained phrases such as, "only your immediate payment will stop further legal action," "I have filed suits [in similar cases]," "I will consider the use of legal remedies," and "instructions have been given to take any action, that is legal, to enforce payment").

In assessing whether communications threaten legal action, "the fact that an attorney — as opposed to a debt collection service — sent the letter 'may create a sliding-scale which increases the sensitivity of the debtor to language in the letter threatening litigation.'" Baptist v. Glob. Holding and Inv. Co., L.L.C., 2007 WL 1989450, at *4 (E.D.N.Y. Jul. 9, 2007) (collecting cases). This is because, as the Fourth Circuit has observed, "to most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue." Nat'l Fin. Servs., Inc., 98 F.3d at 136. In a close case, this factor can be determinative. See Jenkins, 999 F. Supp. at 1137 (noting that "in cases where the likelihood of legal action is not clear from the

language, the letter's source can be determinative, especially if it purports to be from an attorney," which "signals to the unsophisticated consumer that legal action is at hand" (collecting cases)); <u>Canlas v. Eskanos & Adler, P.C.</u>, No. C 05-00375 JF, 2005 WL 1630014, at *3 (N.D. Cal. Jul. 6, 2005) (finding that "the threat is implied by the combination of vague language regarding 'further action' <u>and</u> the identity of the sender" as an attorney (emphasis in original)). Here, neither letter purports to be from an attorney. This factor therefore weighs against any threat of imminent legal action.

For these reasons, the court finds that, taken as a whole, the language of the two dunning letters does not impermissibly threaten litigation under § 1692e(5). Having made this determination, the court need not address whether Winans adequately alleged that FCSI did not intend to bring suit. <u>Jenkins</u>, 999 F. Supp. at 1138.

Finally, § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). A debt collection letter violates § 1692e(10) where it falsely represents "that unpaid debts would be referred to an attorney for immediate legal action." <u>Nat'l Fin. Servs., Inc.</u>, 98 F.3d at 138; <u>Combs</u>, 1998 WL 911691, at *2. For the above reasons, the court finds that the second letter does not contain

any false threat of "immediate legal action" that would give rise to a violation of § 1692e(10). Nat'l Fin. Servs., Inc., 98 F.3d at 138 (4th Cir. 1996); see Combs, 1998 WL 911691, at *2 (unpublished) (applying unsophisticated debtor standard and holding that debt collection letter did not violate § 1692e(10) where notice warned consumer "[t]his is your opportunity to resolve this matter amicably," and "[w]e advise you to consult with your attorney regarding your liability" (alterations in original)); cf. Nat'l Fin. Servs., Inc., 98 F.3d at 136–38 (applying least sophisticated consumer standard and holding that debt collection letter violated § 1692e(10) where notice stated "[y]our account will be transferred to an attorney if it is unpaid after the deadline date" and advised consumer to "remember your attorney will want to be paid," id. at 136).

For these same reasons, the court finds that Winans fails to state a plausible claim under either the NCCAA or the NCDCA with regard to any alleged threat of litigation. See N.C. Gen. Stat. §§ 58-70-95(7), 58-70-110(4), 75-51(7), 75-54(4).

### 3. Threat of Wage Garnishment and Asset Forfeiture

Winans alleges that the second letter impermissibly threatened "imminent asset seizure," claiming that use of the term "further procedures" when coupled with the unchecked boxes entitled "Employment Verified" and "Assets Located" constituted an impermissible threat of wage garnishment as well as attachment of

20

the recipient's assets.  (Doc. 1 ¶¶ 50, 54.)  Winans appears to allege that these representations violate 15 U.S.C. §§ 1692e(4), (5) & (10), 1692f(6), and N.C. Gen. Stat. §§ 58-70-95(6), (7), & (8), 58-70-110(4), 75-51(6), (7), & (8), 75-54(4).  Defendants argue that this "bizarre or idiosyncratic" interpretation amounts to "a quantum and far-fetched leap even for the sophisticated consumer."  (Doc. 14 at 12 (first quotation quoting Nat'l Fin. Servs., Inc., 98 F.3d at 136).)

In addition to prohibiting any threat of conduct otherwise prohibited by law or the use of false representations or deceptive means, 15 U.S.C. §§ 1692e(5), (10), section 1692e expressly prohibits a debt collector from making "[t]he representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."  Id. § 1692e(4).  Section 1692f(6) also prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action" to dispossess or disable property where the collector lacks either a right to repossess such property or a present intent to take possession of the property.  Id. § 1692f(6).

Here, the second letter does not contain any language to suggest any impermissible threat of "imminent asset seizure," as Winans alleges.  The letter does not contain any reference to

property, attachment, seizure, garnishment, paychecks, bank accounts, or the participation of law enforcement. (Doc. 2-1 at 2.) Apart from a vague reference to "further procedures" being taken, the letter contains no suggestion that FCSI will conduct an immediate investigation into the consumer's employment status or assets. While it might be a different case if the boxes entitled "Employment Verified" and "Assets Located" were checked, here they only inform the recipient that his employment status and available assets have not been, and may never be, verified. Cf. Swanson v. S. Oregon Credit Serv., Inc., 869 F.2d 1222, 1226–28 (9th Cir. 1988) (holding that letter threatening that "within 48 hours a complete investigation will begin concerning your employment and assets" gave rise to a violation of the FDCPA under the least sophisticated debtor standard). Applying the least sophisticated consumer standard, the court does not find that these references impermissibly threatened wage garnishment or attachment so as to give rise to a violation of the FDCPA.

Under North Carolina law, collection agencies and debt collectors are similarly prohibited from "[r]epresenting that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law." N.C. Gen. Stat. §§ 58-70-95(6), 75-51(6). In addition, a collection agency or debt collector may not

"[t]hreaten[] to take any action not permitted by law," id. §§ 58-70-95(8), 75-51(8) or otherwise "[t]hreaten[] to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made," id. §§ 58-70-95(7), 75-51(7). For the reasons discussed above, the court finds that the language within the second letter does not give rise to a violation of the NCCAA or NCDCA.

### 4. Threat of Third-Party Contact with Employer

Winans also claims that the unchecked box entitled "Employment Verified" implies that FCSI will contact the recipient's employer regarding the debt, an action it was not legally permitted to take. (Doc. 1 ¶ 52); see 15 U.S.C. § 1692c(b); N.C. Gen. Stat. §§ 58-70-105(1), 75-53(1). He appears to allege that this representation gives rise to a violation of 15 U.S.C. § 1692e(5) and N.C. Gen. Stat. §§ 58-70-95(8), 58-70-110(4), 75-51(8), 75-54(4). Defendants contend that debt collectors routinely verify consumers' employment by directly asking the consumer and that the presence of this unchecked box does not amount to an impermissible threat of illegal action. (Doc. 14 at 12-13.) No party cites any relevant case law on this issue.

The FDCPA prohibits debt collectors from communicating with third parties regarding a consumer's debt. 15 U.S.C. § 1692c(b); see also id. § 1692a(2) (defining "communication"). However, debt

collectors may communicate with third parties for the sole purpose
of obtaining "location information," provided that the collector
does not convey or otherwise imply the existence of the consumer's
debt. Id. § 1692c(b); see id. § 1692b (outlining proper procedures
for obtaining such information); Brown v. Van Ru Credit Corp., 804
F.3d 740, 745 (6th Cir. 2015) (discussing the safe harbor
provisions of § 1692b and competing interpretations of
"communication" in this context). "Location information" is
defined as "a consumer's place of abode and his telephone number
at such place, or his place of employment." 15 U.S.C. § 1692a(7).
Under North Carolina law, collection agencies and debt collectors
are similarly prohibited from making unauthorized communications
"with any person other than the debtor or his attorney, except
. . . . [f]or the sole purpose of locating the debtor, if no
indication of indebtedness is made." N.C. Gen. Stat. §§ 58-70-
105(1), 75-53(1); see also id. § 75-50(4) (defining "location
information").

Here, the unchecked box entitled "Employment Verified"
suggests that the consumer's employment status has not been
verified. The letter refers to "employment," and not "employer."
Moreover, it is permissible to verify employment with the debtor
himself. The letter does not therefore imply that contact with
the employer about the debt was made or is contemplated. In
contrast to other cases where courts have found that references to

a debtor's employment gave rise to a violation of the FDCPA, the letter does not contain any reference to Winans's employer or contain language that would otherwise suggest an immediate investigation into his employment status would take place. Cf. Shand-Pistilli v. Prof'l Account Servs., Inc., No. 10-CV-1808, 2010 WL 2978029, at *3-4 (E.D. Pa. July 26, 2010) (holding that plaintiff stated a claim under § 1692c(b) where debt collector sent her a letter indicating it had "contacted her employer and verified her employment status"); Swanson, 869 F.2d at 1226-28 (holding that letter threatening that "within 48 hours a complete investigation will begin concerning your employment and assets," id. at 1226, gave rise to a violation of § 1692e(5) under the least sophisticated debtor standard, where "[t]he phrase 'complete investigation' connote[d] something more than simply obtaining permissible location information," id. at 1228); Sherman v. Fin. Credit, LLC., No. 03 C 00023, 2003 WL 1732601 (N.D. Ill. Apr. 1, 2003) (holding, under pre-Iqbal pleading standard, that dunning letter indicating that debtor was "gainfully employed at BAHAMA BREEZE," id. at *1, her current employer, stated a claim for a violation of FDCPA, but noting that this interpretation was "a stretch even under the most expansive interpretation of the general provisions of § 1692," id. at *2); Raimondi v. McAllister & Assocs., Inc., 50 F. Supp. 2d 825, 827 (N.D. Ill. June 15, 1999) (granting summary judgment in favor of plaintiff for alleged

violations of § 1692e(5) and (10), where letter indicated that "a professional collector will investigate your financial situations through . . . employers"). Applying the least sophisticated consumer standard, the court does not find that these references threatened impermissible third party contact with an employer so as to give rise to a violation of the FDCPA. See Herbert v. Wexler & Wexler, No. 95 C 1452, 1995 WL 535107, at *1 (N.D. Ill. Sept. 5, 1995) (applying unsophisticated consumer standard and finding that debt collection letter did not violate § 1692e(5) where notice stated "[w]e have advised our client of the fact that you are employed and the location of your employment; we have further advised them that you have the ability to pay this debt but refuse to do so" (alteration in original)).

With regard to Winans's alleged violations of the NCCAA and NCDCA, the court finds this analysis persuasive and concludes that he has failed to state a claim under either statute for any alleged threat of unauthorized third-party contact. See N.C. Gen. Stat. §§ 58-70-95(8), 58-70-110(4), 75-51(8), 75-54(4).

## III. CONCLUSION

For the reasons stated, the court finds that Winans fails to state a claim for relief under the FDCPA or applicable state law and the Defendants are entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that the Defendants' motion for judgment on the pleadings (Doc. 13) is GRANTED, and Winans's

complaint (Doc. 1) is DISMISSED WITH PREJUDICE.  A judgment in accordance with this Order will be issued contemporaneously.

 /s/   Thomas D. Schroeder
United States District Judge

August 16, 2018